IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| v. : | CRIMINAL NO. 06-248 |
| RODNEY FRANCIS HICKS : | |

**GOVERNMENT'S SENTENCING MEMORANDUM**

Defendant, Rodney Francis Hicks, who has been arrested at least 12 times, adjudicated delinquent five times and convicted of robbery as an adult, now faces sentencing in federal court for robbing the Wachovia Bank on December 16, 2005.  Defendant Hicks has spent much of his juvenile and adult years committing criminal offenses and has received sentences of fines, probation, and state prison, but nothing has deterred this defendant from his criminal conduct.  For these reasons, as well as for the reasons provided below, the government recommends a sentence of incarceration within the advisory guideline range of 41 to 51 months.

Pursuant to United States v. Cooper, 437 F.3d 324, 330 (3d Cir. 2006), this Court must calculate the advisory guideline range, and then consider that range along with all the pertinent considerations of sentencing outlined in 18 U.S.C. § 3553(a) in determining the final sentence.  "The record must demonstrate the trial court gave meaningful consideration to the § 3553(a) factors. . . . [A] rote statement of the § 3553(a) factors should not suffice if at sentencing either the defendant or the prosecution properly raises 'a ground of recognized legal merit (provided it has a factual basis)' and the court fails to address it."  Id. at 329.  See also

United States v. Schweitzer, 2006 WL 1889986, at *8 (3d Cir. July 11, 2006) (directing district courts to explain all guideline determinations and final sentences, stating, "There is simply no substitute for on-the-record discussion and deliberation. It ensures that the parties are fully informed of their rights and obligations and that the appellate court will be able to assess the merits of the final judgment."); United States v. King, 2006 WL 1889976, at *8 (3d Cir. July 11, 2006) (district courts "should observe the requirement to state adequate reasons for a sentence on the record so that this court can engage in meaningful appellate review.").[1]

The government explains below its view of the proper consideration in this case of the Section 3553(a) factors, which support a sentence within the guidelines in this case.

## I.    BACKGROUND

On June 15, 2006, the defendant pleaded guilty to bank robbery, in violation of 18 U.S.C. § 2113(a). During his plea colloquy, the defendant admitted that on December 16, 2005, he entered the Wachovia Bank in the Cheltenham Shopping Center, 2301 Cheltenham Avenue, Cheltenham, Pennsylvania. He approached the teller and handed her two notes which demanded money and informed the teller that he had a gun. The teller gave the defendant a bank bag which contained $970 in cash and a dye pack.

The defendant then attempted to flee in a car being driven by a second individual

---

[1] In United States v. Grier, 449 F.3d 558, 574-75 (3d Cir. 2006), the panel held that the solitary statement, "The Court believes that 100 months is reasonable in view of the considerations of section 3553(a)," was insufficient to explain the district court's reasoning, and remanded for resentencing. This opinion was subsequently vacated and rescheduled for hearing en banc, likely on a separate issue in the case, regarding whether the preponderance standard applies at sentencing to proof of additional uncharged crimes. The holding with respect to the sufficiency of the sentencing explanation appears to represent the view of the Third Circuit, as made clear in the other cases cited above.

when the dye pack exploded. He instead fled on foot, and was quickly apprehended by the Cheltenham Police. Mr. Hicks was positively identified at the scene by the teller as the person who had just robbed Wachovia Bank.

The defendant initially cooperated with police and the FBI, and gave a written statement implicating himself in the bank robbery. He has maintained culpability for this offense, but declined to give information regarding any others that may have been involved in the bank robbery.

## II.     SENTENCING CALCULATION.

### A.     Statutory Maximum Sentence.

The maximum sentence that may be imposed on the defendant for his violation of 18 U.S.C. § 2113(a) is 20 years imprisonment, a $250,000 fine, 3 years of supervised release, and a $100 special assessment.

### B.     Sentencing Guidelines Calculation.

In imposing sentence, the Court must take into account the considerations of sentencing set forth in 18 U.S.C. § 3553(a). United States v. Booker, 543 U.S. 220, 261 (2005). First, as stated in Section 3553(a)(4), the Court must determine and consider the sentencing range established in the Sentencing Guidelines. The Third Circuit has confirmed: "In consideration of the § 3553(a) factors, a trial court must calculate the correct guidelines range applicable to a defendant's particular circumstances." Cooper, 437 F.3d at 330. See also United States v. King, 2006 WL 1889976, at *8 (3d Cir. July 11, 2006) (explaining requirement of guideline determination). This Court must make findings pertinent to the guideline calculation by applying the preponderance of the evidence standard, in the same fashion as was employed prior to the

Booker decision.  Id.; see also United States v. Giaquinto, 441 F.3d 195, 196 (3d Cir. 2006) (court may continue to determine by a preponderance of the evidence and consider the defendant's relevant conduct in determining the guideline range).  In short, the guideline range should be calculated in the same manner as it was prior to Booker.

> [W]e emphasize that the sentencing courts in this Circuit should continue to follow the requirement to "consider" the Guidelines by calculating a Guidelines sentence as they would have before Booker, including formally ruling on the motions of both parties and stating on the record whether they are granting a departure and how that departure affects the Guidelines calculation, and taking into account this Circuit's pre-Booker caselaw, which continues to have advisory force.

United States v. King, 2006 WL 1889976, at *8 (3d Cir. July 11, 2006).

The necessary calculation of the guideline range includes the determination whether there should be a departure, either upward or downward, pursuant to the Sentencing Guidelines.  See, e.g., United States v. King, 2006 WL 1889976, at *5 (3d Cir. July 11, 2006) (holding that district court erred in not using "ratcheting" procedure to determine extent of upward departure).  The issue of guideline departures is distinct from the Court's authority, recognized in Booker, to impose a final sentence which deviates from the guideline range (which the Third Circuit calls a "variance," see United States v. Vampire Nation, 451 F.3d 189, 195 n.2 (3d Cir. 2006)).  While the final sentence is subject to appellate review for reasonableness, this Court's decision to deny a requested departure is not itself subject to review if the Court makes clear that its denial is based not on a legal determination that the departure is unavailable but on the Court's exercise of its discretion.  Cooper, 437 F.3d at 332-33.]

In this case, as stated in the pre-sentence report (PSR), the correct guideline calculation is as follows.  The base offense level is established at 20 pursuant to U.S.S.G. §

2B3.1. That level is increased by two because the property of a financial institution was taken, pursuant to U.S.S.G. § 2B3.1(b)(1), and two additional levels because a threat of death was made, U.S.S.G. § 2B3.1(b)(2)(F). The offense level is also reduced by a total of three points for his acceptance of responsibility, for a total offense level of 21. The defendant's adult criminal convictions classify him in the category II criminal history range. His sentencing guideline range is therefore 41 to 51 months incarceration.[2]

Based on his extensive, undeterred and continued criminal conduct, this defendant should be sentenced within the guideline range. Over the course of the last 13 years, Rodney Hicks has been arrested at least 12 times, adjudicated delinquent five times, and convicted as an adult in state court for a robbery offense. He has been given the benefit of juvenile therapeutic intervention, probation, and a lengthy state prison sentence, none of which deterred his criminal conduct, as he continued to commit even more serious criminal offenses upon his release.

Once the Court has properly calculated the guideline range, the Court must next consider all of the sentencing considerations set forth in Section 3553(a). Those factors are:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed--

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

---

[2] Although the defendant's criminal history already establishes him as a Category II offender, he has numerous additional juvenile adjudications for mostly violent offenses that were not used to compute his criminal history score, but which could reasonably serve as the basis for an upward departure. The government does not seek an upward departure under the Sentencing Guidelines, but submits that these uncounted adjudications and additional arrests are persuasive reasons for the Court to exercise it sentencing discretion to impose a period of incarceration in the upper portion of the guidelines range of 41 to 51 months.

    (B) to afford adequate deterrence to criminal conduct;

    (C) to protect the public from further crimes of the defendant; and

    (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3) the kinds of sentences available;

(4) the kinds of sentence and the sentencing range established for--

    (A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines . . . issued by the Sentencing Commission . . . that . . . is in effect on the date the defendant is sentenced; . . .

(5) any pertinent policy statement . . . issued by the Sentencing Commission . . . that . . . is in effect on the date the defendant is sentenced.

(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

    A full review of all pertinent factors supports the conclusion that a within-guideline sentence is appropriate in this case.

## III.   ANALYSIS.

###    A   Importance of the Guideline Range.

    The advisory guideline range carries considerable weight even after Booker. As the Third Circuit stated, "a within-guidelines range sentence is more likely to be reasonable than one that lies outside the advisory guidelines range . . . ." Cooper, 437 F.3d at 331. The Court later noted: "The farther a sentence varies from the advisory guidelines range, the more compelling the judge's reasons must be." United States v. King, 2006 WL 1889976, at *7 (3d

Cir. July 11, 2006), quoting United States v. Jordan, 435 F.3d 693, 696-97 (7th Cir. 2006).

The importance of the final guideline range has nothing to do with the guidelines' former mandatory status, which was eliminated in Booker.  Rather, the final guideline range is the starting point for determining reasonableness for three reasons: (1) only the guidelines comprehensively examine the full panoply of sentencing considerations; (2) the guidelines represent decades of nationwide experience and study; and (3) they are the only measure for avoiding unwarranted sentencing disparities.  Congress explicitly created the Sentencing Commission and the guideline system to achieve these ends.

First, the guidelines are much more comprehensive than any other Section 3553(a) factor.  Each of the other 3553(a) factors addresses only a single facet of the many issues posed by sentencing.  "[T]he factors the sentencing commission was required to use in developing the Guidelines are a virtual mirror image of the factors sentencing courts are required to consider under Booker and § 3553(a)."  United States v. Shelton, 400 F.3d 1325, 1332 n.9 (11th Cir. 2005); Statement of Judge Ricardo H. Hinojosa, Chair of the United States Sentencing Commission, quoted in United States v. Peach, 356 F. Supp. 2d 1018, 1020-22 (D.N.D. 2005).  In formulating the guidelines, the Commission was required to and has considered all of the Section 3553(a) factors.  See 28 U.S.C. §§ 991(b)(1), 994(b)(1), (c), (f), (g), (m); U.S.S.G. § 1A1.1 Editorial Note.

Second, the guidelines are the product of years of nationwide experience and sustained study.  In drafting the original guidelines (which became effective with respect to offenses committed on or after November 1, 1987), the Sentencing Commission canvassed prior sentencing practice, identifying aggravating and mitigating factors.  28 U.S.C. § 994(m); U.S.

Sentencing Commission, Supplementary Report on the Initial Sentencing Guidelines and Policy Statements 16-17 (1987).  Since then, the Commission has continued to study district court and appellate sentencing decisions, and has fine-tuned the guidelines to take them into account.  U.S.S.G. App. C.   Indeed, the Booker Court specifically affirmed that the Commission will continue to study appellate and district court sentencing decisions, and "will continue to modify its Guidelines in light of what it learns, thereby encouraging what it finds to be better sentencing practices."  Booker, 543 U.S. at 263 (Breyer, J.).

The Sentencing Commission's incomparable flow of nationwide information, and its years of concentrated study on this topic, merit strong consideration by judges who are assigned the task of determining appropriate sentences for criminal conduct.  United States v. Wilson, 350 F. Supp. 2d 910, 914-25, reaffirmed on denial of reconsideration, 355 F. Supp. 2d 1269, 1271-88 (D. Utah 2005); United States v. Wanning, 354 F. Supp. 2d 1056, 1060-62 (D. Neb. 2005); Peach, 356 F. Supp. 2d at 1020-22.

Third, the correctly calculated guideline range is the only means to evaluate the statutory sentencing goal on which Booker placed so much emphasis: "the need to avoid unwarranted sentence disparities," 18 U.S.C. § 3553(a)(6).[3]  Congress, the Court, and the

---

[3] Every opinion in Booker acknowledged the express national policy, as articulated by Congress, that sentences be uniform across the country to the extent possible.  See, e.g., Booker, 543 U.S. at 253 (majority opinion of Breyer, J.) ("Congress' basic goal in passing the Sentencing Act was to move the sentencing system in the direction of increased uniformity."); id. at 744 (same) ("Congress' basic statutory goal of diminishing sentencing disparity depends for its success upon judicial efforts to determine, and to base punishment upon, the real conduct that underlies the crime of conviction."); id. at 292 (dissenting opinion of Stevens, J.) ("The elimination of sentencing disparity, which Congress determined was chiefly the result of a discretionary sentencing regime, was unquestionably Congress' principal aim."); id. at 303-04 (dissenting opinion of Scalia, J.) ("the primary objective of the Act was to reduce sentencing disparity.").

guidelines all seek to minimize such disparity compared to "all other similar sentences imposed nationwide." United States v. White, 406 F.3d 827, 837 (7th Cir. 2005).  The Sentencing Guidelines provide the comprehensive information and guidance about sentencing around the nation that is essential to accomplishing Congress' goal of uniform federal sentencing.  "The only way of avoiding gross disparities in sentencing from judge-to-judge and district-to-district is for sentencing courts to apply some uniform measure in all cases.  The only standard currently available is the Sentencing Guidelines." Wilson, 350 F. Supp. 2d at 924; Wanning, 354 F. Supp. 2d at 1061-62 ("we have no meaningful substitute for the neutrality, coherence, and equality" that the guidelines provide).  Thus, measuring reasonableness in relation to the guideline range serves "to minimize the wide disparity in sentencing across the country for similarly situated defendants that led to the enactment of the Guidelines in the first place." United States v. Paulus, 331 F. Supp. 2d 727, 733 (E.D. Wis. 2005).

   Thus, the Third Circuit in Cooper stated that "'[t]he Guidelines remain an essential tool in creating a fair and uniform sentencing regime across the country,' and provide a natural starting point for the determination of the appropriate level of punishment for criminal conduct." Cooper, 437 F.3d at 331, quoting United States v. Mykytiuk, 415 F.3d 606, 608 (7th Cir. 2005).[4]

---

[4] In aiming for uniform sentencing, the appropriate focus is on sentences imposed in federal court for like offenses.  A panel of the Third Circuit correctly found "no merit in [the] argument that the District Court should have considered what [the defendant]'s sentence would have been had he been convicted of a similar state-law offense. Booker directs our reasonableness review to the factors set forth under federal law for federal criminal offenses. That a separate sovereign chooses to implement its criminal sentencing scheme in a different manner does not impact our analysis under § 3553(a)(6), which focuses on the need to avoid unwarranted disparities among sentences issued by federal courts for violations of federal law." United States v. Cropper, 2006 WL 372338, at *4 n.7 (3d Cir. Feb. 17, 2006) (not precedential).

Accordingly, while many appellate courts have reversed as unreasonable sentences imposed outside the applicable guideline ranges,[5] reversals of sentences imposed within the guideline range have been extraordinarily rare, and have occurred only where the appellate court found that the district court did not adequately explain the sentence.  See, e.g., United States v. Carty, 2006 WL 1975895, at *4-6 (9th Cir. July 17, 2006).  Moreover, the Courts of Appeals have emphasized that the further outside the range, either above or below, a sentence falls, the stronger must be the justification for such disparate sentencing.[6]

### B. Application of the § 3553(a) Factors.

In this case, no unusual circumstances exist which warrant an exception to the preference for guideline sentencing.  Section 3553(a)(4) and (5) specifically direct the Court to consider the applicable guidelines, and Section 3553(a)(6) commands that the Court strive to avoid disparity in sentencing, which, as explained above, is best accomplished through faithful application of the guidelines.  The other 3553(a) factors also point to this conclusion.

The defendant engaged in a serious offense.  Already having been adjudicated

---

[5]  See, e..g, United States v. Zapete-Garcia, 447 F.3d 57 (1st Cir. 2006); United States v. Smith, 445 F.3d 1 (1st Cir. 2006); United States v. Davenport, 445 F.3d 366 (4th Cir. 2006); United States v. Hampton, 441 F.3d 284 (4th Cir. 2006); United States v. Moreland, 437 F.3d 424, 434-37 (4th Cir. 2006); United States v. Duhon, 440 F.3d 711 (5th Cir. 2006); United States v. Goody, 442 F.3d 1132 (8th Cir. 2006); United States v. Lazenby, 439 F.3d 928, 933 (8th Cir. 2006); United States v. McVay, 447 F.3d 1348, 1357 (11th Cir. 2006).

[6]  "[T]he farther the judge's sentence departs from the guidelines sentence . . . the more compelling the justification based on factors in section 3553(a) that the judge must offer in order to enable the court of appeals to assess the reasonableness of the sentence imposed."  United States v. Dean, 414 F.3d 725, 729 (7th Cir. 2005).  The Third Circuit cited this view with approval in King.  Accord United States v. Smith, 445 F.3d 1, 4 (1st Cir. 2006); United States v. Gatewood, 438 F.3d 894, 896 (8th Cir. 2006); United States v. Moreland, 437 F.3d 424, 434 (4th Cir. 2006).

delinquent and convicted as an adult for robbery offenses, this defendant committed the aggravated offense of bank robbery.  His crime falls squarely within the class of cases to which the applicable guidelines are addressed, and thus consideration of the nature of the offense, § 3553(a)(1), counsels in favor of the guideline sentence.

Further, the defendant's criminal history supports the need for significant incarceration.  He has been adjudicated or convicted of violent offenses on multiple occasions, and has spent  much of his life involved in the criminal justice system.  It is clear that the recommended term of imprisonment is required "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense."  Only a sentence of incarceration within the guidelines will accomplish those goals, as the defendant has been undeterred by the sentences he has received for his past convictions.  Furthermore, the recommended sentence of incarceration affords adequate deterrence to others who would commit a similar offense, and protects the public from further crimes of the defendant, for at least as long as he remains incarcerated.  § 3553(a)(2).

There is no need in this case to adjust the sentence in order "to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner . . . ."  § 3553(a)(2)(D).  The defendant has demonstrated that he can remain employed.  He has also demonstrated that despite being given the opportunity of employment, he will continue to commit serious criminal offenses.  In any event, Hicks should be able to secure the same type of employment upon his release from prison, so this factor should not mitigate his sentence.

The defendant has simply not set forth any persuasive argument for leniency.[7]  He must be held responsible for his increasingly more dangerous actions.  Since his release from state prison he has continued to commit criminal offenses.  Accordingly, as explained above, all the appropriate considerations of sentencing, such as the nature of the offense and the character of the offender, call for a sentence of incarceration within the guideline range in order to protect society from his persistent and undeterred criminal conduct.  As set out above, all of the appropriate considerations of sentencing, especially the defendant's recidivism, favor the imposition in this case of a sentence in the upper portion of the guideline range.  For all of these reasons, the government respectfully recommends that the Court sentence the defendant within the guideline range defined above.

Respectfully submitted,

PATRICK L. MEEHAN
United States Attorney

_____
Michelle T. Rotella
Assistant United States Attorney

---

[7] It is incumbent on the Court to address any defense argument in determining the final sentence.  See Cooper, 437 F.3d at 329 (directing that "[t]he record must demonstrate the trial court gave meaningful consideration to the § 3553(a) factors. . . . [A] rote statement of the § 3553(a) factors should not suffice if at sentencing either the defendant or the prosecution properly raises 'a ground of recognized legal merit (provided it has a factual basis)' and the court fails to address it.").

**CERTIFICATE OF SERVICE**

I hereby certify that on this date I caused a true and correct copy of the foregoing sentencing memorandum to be served by U.S. Mail, upon the following:

>Rossman Thompson
>Office of the Federal Defender for the Eastern District of Pennsylvania
>Suite 540 West - The Curtis Center
>601 Walnut Street
>Philadelphia, Pennsylvania 19106

_____
Michelle T. Rotella
Assistant United States Attorney

Dated: _____